RENDERED:  APRIL 24, 2026; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-1275-MR

JAMES IVY                                                                APPELLANT


APPEAL FROM SHELBY CIRCUIT COURT
v.        HONORABLE MELANIE BRUMMER, JUDGE
ACTION NO. 19-CI-00055


ONTRAC, INC. D/B/A BLITZ
BUILDERS, INC.                                                    APPELLEE

AND


NO. 2024-CA-1344-MR

ONTRAC, INC. D/B/A BLITZ
BUILDERS, INC.                                          CROSS-APPELLANT


CROSS-APPEAL FROM SHELBY CIRCUIT COURT
v.        HONORABLE MELANIE BRUMMER, JUDGE
ACTION NO. 19-CI-00055


JAMES IVY                                                    CROSS-APPELLEE

AND


NO. 2025-CA-0429-MR

JAMES IVY                                                           APPELLANT


                    APPEAL FROM SHELBY CIRCUIT COURT
v.                  HONORABLE MELANIE BRUMMER, JUDGE
                    ACTION NO. 19-CI-00055



ONTRAC, INC. D/B/A BLITZ
BUILDERS, INC.                                                      APPELLEE



                        OPINION AFFIRMING IN PART,
                    REVERSING IN PART, AND REMANDING

                            ** ** ** ** **

BEFORE:  THOMPSON, CHIEF JUDGE; COMBS AND ECKERLE, JUDGES.

ECKERLE, JUDGE:  This appeal concerns both parties' entitlement to attorneys'

fees.  Appellant/Cross-Appellee, James Ivy ("Owner"), challenges the Shelby

Circuit Court's Opinion and Order denying his motion for attorneys' fees and

granting the motion of Appellee/Cross-Appellant, Ontrac, Inc. d/b/a Blitz Builders,

Inc. ("Builder"), for entitlement to attorneys' fees.  Builder's cross-appeal alleges

that the Trial Court should have awarded it attorneys' fees in a greater amount.

Finally, Owner challenges Builder's non-wage garnishment against a joint account

that Owner shares with his spouse, arguing that certain retirement funds deposited

in the account are statutorily exempt.

This Court, having been fully briefed on the matter, hearing oral arguments on April 7, 2026, and carefully considering the merits, hereby affirms the Shelby Circuit Court's Opinion and Order in part, reverses it in part, and remands with further instructions. Regarding Owner's appeal, this Court holds the following: (1) Owner's underlying lawsuit triggered the unilateral, fee provision contained within the parties' building contract; (2) that provision is not unconscionable or in contravention of public policy; and (3) Owner is not entitled to recover attorneys' fees as a matter of equity. This Court further holds, in review of Builder's cross-appeal, that the Trial Court erred in calculating the amount awarded to Builder for its reasonable attorneys' fees. Regarding Owner's separate appeal of the garnishment of his joint account, this Court affirms the Order upholding the garnishment and denying the application of an exemption regarding commingled funds held in a joint bank account.

## FACTUAL AND PROCEDURAL BACKGROUND

In September of 2018, Owner contracted with Builder for the construction of a pole barn on Owner's property. The contract, titled "Building Purchase Agreement Terms and Conditions" (the "Contract"), identified the dimensions and specifications of the barn with a purchase price of $49,860.00. The Contract required Builder to construct the barn in a workmanlike manner.

Central to this appeal and cross-appeal is the attorneys' fees provision (the "Fee Provision") located in section 13 of the Contract, which reads as follows:

> If the [Builder] is required to employ an attorney to enforce the provisions of this [Contract] or any of its rights hereunder, the [Builder] shall have the right to receive from the [Owner] all costs and expenses including reasonable attorneys' fees incurred, whether such action results in litigation or not.

Trial Record ("TR"), p. 299.

Less than one month into construction, Owner experienced problems with Builder's erection of the barn. Specifically, among other issues, Owner reported to Builder that it framed an eight-by-10-foot overhead door in an incorrect location and failed to deliver or install the door. Owner also reported that Builder failed to deliver or install a 12-by-10-foot overhead door. Owner eventually provided Builder with a "punch list" of 23 items in need of delivery, correction, repair, or replacement. Builder argued that it repaired, replaced, or installed the identified items, or was willing to do so but Owner would not allow Builder on the property.

During the course of construction, Owner remitted payments to Builder totaling $52,065.00. This amount represented the contractual price, along with post-contractual costs for materials. On February 4, 2019, Owner filed suit against Builder in the Shelby Circuit Court alleging damages totaling $46,712.32. Owner did not plead specific counts or causes of action. Instead, Owner claimed

-4-

that Builder breached the terms of Contract by providing negligent and defective work and by breaching Builder's warranty. In review of Owner's complaint, we surmise that while Owner averred that Builder breached the Contract in numerous ways, he categorized his breach of contract causes of action into two counts.

First, Builder allegedly breached the contract by performing work in a defective and negligent manner through the following acts and omissions: "doors were put in incorrect location or were not installed at all; posts are slit, posts are incorrectly located, screws and bent metal need to be replace [sic], trash not picked up, posts not set to grade, additional rock charges and other incorrect items." TR, p. 4. Owner also alleged that Builder's unworkmanlike construction amounted to a material breach of the Contract, resulting in $45,000.00 in damages. Second, Owner alleged that Builder materially breached the Contract by failing to provide the following items necessary for completion of the work: "diesel fuel, use of ATV, dozer use, hauling dirt, and personal time of the [Owner], and other items." TR, p. 4. For this count, Owner sought damages in the amount of $1,712.32.

Owner's complaint also alleged that Builder was in breach of warranty, and that Builder committed fraud by failing to obtain a residential building permit. In addition to the above-listed compensatory damages, Owner's complaint sought punitive damages and an award of attorneys' fees and costs.

Builder subsequently filed its answer and asserted a counterclaim against Owner. It asserted defamation, libel, and intentional interference with Builder's contracts.

On August 28, 2023, and through August 30, 2023, the case proceeded to a jury trial. Evidence consisted of, among other things, the Contract, payments that Owner made to Builder, lay and expert testimony regarding the alleged deficiencies or missing components, and communications between the parties. Builder did not present any evidence supporting its counterclaim. Accordingly, and at the conclusion of evidence, the Trial Court granted Owner's motion for a directed verdict as to Builder's claims.

The Trial Court instructed the jury on the definition of "good workmanlike manner," which it defined as "construction performed as a reasonable builder of pole barns would perform under the same or similar circumstances for the building of the pole barn about which you have heard evidence." TR, pp. 455-56. The Trial Court then provided the jury with two instructions. "Instruction No. 1" asked whether Builder breached its duty under the Contract to build the barn in a good and workmanlike manner, free of defects, and in conformity with the specifications of the Contract. This Instruction also requested that the jury exclude from its award amounts that Owner could have mitigated with the exercise of ordinary care after learning of the defects. "Instruction No. 2" explained to the

-6-

jury that should it find that Owner prohibited Builder from making repairs or installations, it "should find in favor of the [Builder] and exclude those items from [the] award."

The jury returned a verdict finding in favor of Owner on Instruction No. 1., that Builder failed to fulfill its obligations under the Contract in a good and workmanlike manner, free of defects, and in accordance with the Contract. The jury awarded Owner $9,840.00 in damages. The jury answered "No" to Interrogatory No. 4, which asked if the evidence demonstrated that the Builder had an obligation to reimburse Owner for its use of his diesel fuel, ATV, dozer, and for Owner's hauling of dirt. Both parties appear to agree with the Trial Court's conclusion, discussed below, that the jury award equates to the amount of two overhead doors that Builder failed to deliver and install.

Subsequent to the jury's verdict, Owner filed a motion to recover his attorneys' fees and costs in the amount of $29,800.00. Owner's claim for entitlement to attorneys' fees was based entirely on the Fee Provision. Owner did not specifically concede that the Contract is silent as to his alleged entitlement to attorneys' fees, but he nonetheless argued that the Trial Court is required under Kentucky law to construe the Fee Provision as reciprocal.

In turn, Builder not only objected to Owner's motion, but also filed a cross-motion for attorneys' fees pursuant to the Fee Provision in the amount of

$61,588.75.  Builder additionally cited Kentucky Revised Statute ("KRS") 411.195 as authorizing an award of attorneys' fees.  Builder's motion supplied the Trial Court with a supporting affidavit from its trial counsel, Gregg Y. Neal ("Neal").  In his affidavit, Neal attested to incurring attorneys' fees in the amount of $61,588.75.  Neal attached to his affidavit a one-page "Billing history report" listing invoice numbers, the date of the invoice, the total amount billed, Builder's payments of the invoice, and the remaining balance.  The Billing history report did not specify the amount of hours Neal expended, the work completed, or his hourly rate.

By order dated May 1, 2024, the Trial Court issued the Opinion and Order subject to this appeal.  The Trial Court granted Builder's motion for attorneys' fees and denied Owner's motion for attorneys' fees.  First, the Trial Court concluded that the Fee Provision's clear language provided Builder with a unilateral right to recover attorneys' fees, which was enforceable as it did not violate public policy or judicial precedent.  Second, the Trial Court determined that the Fee Provision's language did not entitle Owner to attorneys' fees as there was no language to that effect.  The Trial Court rejected Owner's notion that it is required to interpret the Fee Provision in a reciprocal manner absent any authority to the contrary.

Third, the Trial Court analyzed the reasonableness of Builder's requested attorneys' fees.  The Trial Court acknowledged that the Fee Provision

-8-

afforded Builder its reasonably incurred attorneys' fees. But it encountered difficulty squaring the reasonableness of Builder's fee request when compared to the amount of fees that Owner's trial counsel sought for the same work. Builder, through Neal's claimed fees, sought more than twice the amount than Owner. Ultimately, the Trial Court concluded that Builder's claim of attorneys' fees was unreasonable.

The Trial Court interpreted the Fee Provision's use of the term "reasonable attorneys' fees," as requiring a calculation of fees based on the factors described in the Rules of the Supreme Court ("SCR") 3.130(1.5). The Trial Court placed great emphasis on the first factor that weighs "the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; which evaluates the time and labor required of counsel." SCR 3.130(1.5)(a)(1). In evaluating the reasonable time necessary in defense of the action, the Trial Court described Neal's Affidavit as "completely redacted in specifying the amount of time and specific tasks/labor completed[,]" including time "preparing three times for expert testimony (twice for the same expert that did not appear, and for expert Botner), work preparing for trial, and the three-day trial that he alleges had, 'numerous claims[.]'" TR, p. 503.

Notwithstanding the lack of supporting information, the Trial Court bestowed Builder leeway and authenticated the amount of time that Neal

expended, per his invoice, for the three-day jury trial. The Trial Court did not explicitly identify the amount of hours that Neal expended during the trial or his hourly rate. The Trial Court then attempted to evaluate the reasonableness of Neal's claimed jury trial fees by comparing said fees with the total amount of fees requested from Owner's trial counsel in the amount of $28,931.25, less than one-half of what Neal requested. The Trial Court noted that both trial attorneys practiced in the same area and had similar experience. Without expounding on its calculation, the Trial Court ruled the following: "Based upon the scant evidence provided to justify [Neal's] fee and in recognition of the amount claimed by [Owner's trial counsel] for litigating the entire case, this Court awards [Builder] $30,794.38 on its claim for reasonable attorneys' fees pursuant to [the Contract]." TR, p. 503. This amount represents exactly half of the $61,588.75 that Builder claimed as attorneys' fees.

Owner subsequently filed a motion to reconsider, alter, amend, or vacate the Trial Court's Opinion and Order. Owner argued that the litigation did not trigger the Fee Provision given that Builder was not required to "enforce the provisions of the [contract] or any of its rights [there]in." Said differently, Owner asserted that Builder's defense of the action did not qualify as "asserting any of its rights" under the Contract. Owner also argued that the Trial Court's fee award

-10-

directly contravened public policy, as Builder did not initiate suit, bring any counterclaims against Owner under the Contract, or become the prevailing party.

On September 20, 2024, the Trial Court denied Owner's motion. The Trial Court reasoned that Builder incurred attorneys' fees to defend Owner's lawsuit, thereby falling within the Fee Provision. The Trial Court concluded that while Owner had already paid the contractual purchase price of the barn, Builder was forced to employ an attorney to prevent Owner from recouping those funds, which constituted an act of enforcement of Builder's rights under the Contract.

On October 28, 2024, Builder filed an affidavit for non-wage garnishment against Owner, seeking the $30,794.38 in awarded attorneys' fees from a joint bank account held by Owner and his spouse. Owner challenged the garnishment, alleging that KRS 161.700 and 427.150 exempt from garnishment monthly pension benefits payable to Owner's spouse from the Kentucky Teachers' Retirement System ("TRS"), which are deposited and held in the joint account. On January 28, 2025, the Trial Court denied Owner's challenge to the non-wage garnishment, holding that retirement benefits, once paid out to the beneficiary, are not exempt from garnishment. Owner filed a motion to reconsider, which the Trial Court also denied.

Thereafter, Owner appealed to this Court challenging the Trial Court's Opinion and Order awarding Builder attorneys' fees, in addition to its denial of

Owner's motion for fees. Builder filed a cross-appeal contesting the amount of the attorneys' fee award. Subsequently, Owner appealed the Trial Court's Opinion and Order denying his challenge to Builder's garnishment. Neither party appeals the jury's verdict as to liability or damages.

## STANDARD OF REVIEW

This Court applies an abuse of discretion standard of review to claims of error concerning a Trial Court's award of attorneys' fees. *Banker v. University of Louisville Athletic Ass'n, Inc.*, 466 S.W.3d 456, 465 (Ky. 2015). Thus, we will not disturb a Trial Court's decision unless it was "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Goodyear Tire and Rubber Co. v. Thompson*, 11 S.W.3d 575, 581 (Ky. 2000). Furthermore, "[t]he interpretation of a contract, including determining whether a contract is ambiguous, is a question of law for the courts and is subject to *de novo* review." *3D Enterprises Contracting Corp. v. Louisville and Jefferson County Metropolitan Sewer District*, 174 S.W.3d 440, 448 (Ky. 2005) (citing *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 384 (Ky. App. 2002)). Finally, the Trial Court's "interpretation of a garnishment or exemption statute is, of course, a question of law . . . [and] [t]his Court reviews the trial court's legal conclusions de novo." *Brown v. Commonwealth, ex rel Nat. Resources and Env't Prot. Cab.*, 40 S.W.3d 873, 875

(Ky. 1999) (citing *Louisville and Nashville Railroad Co. v. Commonwealth, ex rel Kentucky Railroad Comm'n*, 314 S.W.2d 940, 943 (Ky. 1958)).

## ANALYSIS

### I.    Owner's Appeal

#### A. Kentucky Rules of Appellate Procedure

It is incumbent upon this Court to recognize and discuss Owner's violations of Kentucky Rule of Appellate Procedure ("RAP") 32(A)(4). Specifically, Owner failed to provide proper and conforming preservation statements.  Owner provided generalized statements that he preserved the below arguments within his motion for attorneys' fees and subsequent motion to alter, amend, or vacate the Trial Court's Opinion and Order.  However, this Court was required to comb these motions to identify Owner's arguments, or lack thereof. Having determined that Owner violated RAP 32(A)(4), this Court may proceed as follows:  (1) ignore the deficiency and proceed with review; (2) strike the brief or its offending portions; or (3) review the issues raised for manifest injustice only. *Hallis v. Hallis*, 328 S.W.3d 694, 696 (Ky. App. 2010).  This Court opts to ignore the deficiency and proceed with reviewing the appeal on the merits.  However, we caution appellate counsel that future violations will not be met with such tolerance. Furthermore, this Court's leniency in this instance shall not be utilized as precedential authority.

**B. Builder's Entitlement to Attorneys' Fees**

Owner's first allegation of error is that the Trial Court abused its discretion in awarding Builder attorneys' fees at all. Owner contends that the Fee Provision was not triggered by the underlying litigation, and Builder is therefore not entitled to recover any attorneys' fees. In the alternative, Owner requests that this Court set aside the Fee Provision as unconscionable or against public policy.

*1. Application of the Fee Provision*

Kentucky adheres to the "American rule," which permits a party to recover attorneys' fees where specifically authorized by statute or contract. *Superior Steel, Inc. v. Ascent at Roebling's Bridge, L.L.C.*, 540 S.W.3d 770, 787 (Ky. 2017). Indeed, it is well-established law that absent a statute or contract expressly providing for such awards, each party generally bears its own fees and costs of litigation, notwithstanding equitable exceptions. *E.g.*, *Bell v. Commonwealth*, 423 S.W.3d 742 (Ky. 2014). In the present appeal, Builder asserted entitlement to attorneys' fees pursuant to the Fee Provision of the Contract, as well as pursuant to KRS 411.195.

We first address Builder's contractual entitlement to attorneys' fees pursuant the Fee Provision with our *de novo* standard of review in mind. *See Rumpel v. Rumpel*, 438 S.W.3d 354, 360 (Ky. 2014). The Fee Provision states as follows:

> If the [Builder] *is required to employ an attorney to enforce the provisions of this* [*Contract*] *or any of its rights hereunder*, the [Builder] shall have the right to receive from the [Owner] all costs and expenses including reasonable attorneys' fees incurred, whether such action results in litigation or not."

(Emphasis added.) The language of the Fee Provision is clear. We ascertain no ambiguity. *See Hazard Coal Corp. v. Knight*, 325 S.W.3d 290, 298 (Ky. 2010) ("A contract is ambiguous if a reasonable person would find it susceptible to different or inconsistent interpretations."). The Fee Provision is unilateral and precisely provides that only Builder may obtain reasonable attorneys' fees if required to employ counsel to enforce the Contract and its rights thereunder. "'In the absence of ambiguity, a written instrument will be enforced strictly according to its terms,' and a court will interpret the contract's terms by assigning language its ordinary meaning and without resort to extrinsic evidence." *Kentucky Shakespeare Festival, Inc. v. Dunaway*, 490 S.W.3d 691, 694 (Ky. 2016) (quoting *Wehr Constructors, Inc. v. Assurance Co. of America*, 384 S.W.3d 680, 687 (Ky. 2012)).

Owner submits that the Fee Provision remained untriggered because Owner paid Builder the full contractual amount owed prior to the commencement of the underlying lawsuit, and Builder was not forced to commence its own suit for relief. However, Builder's retainment of counsel and payment of attorneys' fees were in direct defense of Owner's lawsuit. Builder's defense of the underlying

-15-

action can only legitimately be characterized as protecting its right to Owner's full payment under the Contract. While Builder and the Trial Court utilize the term "offsets," in describing Builder's right to retain Owner's full contractual payment, there should be no confusion that Builder retained counsel to prevent a judgment requiring it to return payments to Owner. Stated another way, Owner commenced the underlying litigation to recoup monies that he had paid to Builder pursuant to the Contract, and this very case potentially exposed Builder to liability in the form of compensatory damages. Therefore, we find no error in the Trial Court's interpretation of the Fee Provision, including its triggering event, which occurred when Builder was required to employ counsel to enforce its right to retain the monies Owner remitted Builder pursuant to the Contract. The language of the Contract does not restrict Builder to recovery exclusively when it initiates, versus defends, suit as to the enforcement of its terms. Nor would it make sense to do so, as the claims and counterclaims in the case *sub judice* make clear.

Notwithstanding the above analysis, this Court briefly addresses the non-binding cases on which Owner relies in asserting his argument that the Fee Provision was not triggered. In the first case, *LJM 12, L.L.C. v. H.C. Truitt Co.*, this Court issued an unpublished opinion holding that the appellee, a roofing company, "fully performed the contract [the appellant] agreed to, thereby creating a debt owed by [the appellant] to [the appellee]." No. 2009-CA-000968-MR, 2010

-16-

WL 4860375, at *3 (Ky. App. Nov. 12, 2010). Invoking the statutory authority provided by KRS 411.195,[1] we held that the roofing company was entitled to reasonable attorneys' fees for its action to collect the debt. *Id.* Owner misreads our non-binding holding in *LJM 12* for the proposition that a contractual attorneys' fees clause is *only* enforceable to recover unpaid moneys, debts, or a lien on real property as permitted under KRS 411.195. This interpretation is simply not supported by our decision, which considered the discrete question of whether the roofing contract's specific attorneys' fees clause was valid. 2010 WL 4860375, at *1. The explicit language of that provision stated that attorneys' fees would be awarded "if it should be necessary to pursue legal action to secure payment." *Id.* The Fee Provision that Owner signed, which by its express terms does not even require litigation to collect, is clearly distinguishable. Moreover, our holding in *LJM 12* supports our finding, *infra*, that a unilateral attorneys' fees provision is not contrary to public policy and is enforceable. *Id.*

Owner next cities to *Heartland Materials, Inc. v. Warren Paving, Inc.*, in which the Federal District Court enforced a *reciprocal* attorneys' fees provision that only applied in the event of a breach of contract, with its analysis simply

---

[1] KRS 411.195, titled "Enforceability of written agreement to pay attorney fees in event of default," states the following: "Any provisions in a writing which create a debt, or create a lien on real property, requiring the debtor, obligor, lienor or mortgagor to pay reasonable attorney fees . . . in the event of default, shall be enforceable . . . ."

identifying the date of the contractual breach. 384 F. Supp. 3d 786, 792 (W.D. Ky. 2019).[2] Once again, the facts are distinguishable from the bargained-for and explicit Fee Provision in this case. At most, the *Heartland Materials* decision suggests that Owner could have bargained for more favorable contractual language, which he intentionally chose to refrain from doing. And of course, the Fee Provision here, as stated *supra*, does not require litigation, but rather simply the employment of counsel. Furthermore, the Fee Provision is not limited to breach of contract claims; and Owner did not limit himself to a claim for breach. He also sued upon theories of breach of warranty, negligence, and fraud, and he sought both compensatory and punitive damages. Thus, his cited caselaw for breach of contract is not controlling. Therefore, for all of these reasons, Owner has failed to provide sufficient support opposing our affirmance of the Trial Court's conclusion that Builder incurred attorneys' fees to enforce its rights under the contract and, in so doing, triggered the application of the Fee Provision.

Although the following issue is now superfluous, given our analysis *supra*, Builder also sought to apply KRS 411.195 as an alternative basis for recouping attorneys' fees. This Court finds no need to extend this statutory

---

[2] Owner also cites a prior unpublished federal decision relating to the same contractual dispute, which does not implicate attorneys' fees and is otherwise devoid of any analysis pertinent to the issue *sub judice*. *See Warren Paving, Inc. v. Heartland Materials, Inc.*, No. 5:14-CV-149-TBR, 2015 WL 269204, at *5 (W.D. Ky. Jan. 21, 2015).

-18-

provision to the appeal *sub judice.* Builder maintained adequate grounds to recoup attorneys' fees from the Contract itself. Further consideration of the application of KRS 411.195 is unnecessary, especially given that Owner submitted to Builder the entirety of the contractual amount owed, and Owner raises credible questions as to the statute's application where, as here, Owner is not in default. Nevertheless, we note that the Contract certainly created a debt for the construction of the barn. This Court has found far fewer "writings" as creating a debt. *See, e.g.*, *Haney v. Stykes*, 688 S.W.3d 561, 564, 568 (Ky. App. 2023) (invoices for tax preparation "created a debt for services performed"). Further, Owner's action to recoup money owed under the Contract can, by way of logic, implicate the default requirement espoused in KRS 411.195. For example, had Owner refused to supply full payment for the completed barn and withheld payments pending resolution of the dispute, as opposed to providing full payment and then suing to recoup those payments, then KRS 411.195 would likely apply. However, we need not delve into the nuances of KRS 411.195 or its applicability to the appeal before us, as the Contract plainly provides for Builder's right to recover attorneys' fees. There is simply no need for this Court to supply unnecessary *obiter dictum* by relying on statutory authority to enforce the Fee Provision.

Having no need to construe the Fee Provision beyond its clear language, we find no error in the Trial Court's application of the Fee Provision in

-19-

awarding Builder attorneys' fees.  Owner is obligated to pay Builder's attorneys' fees based upon the Contract as a matter of law.  Therefore, we turn to the next issue on appeal, namely, whether the Trial Court abused its discretion in concluding the Fee Provision is not contrary to public policy or unconscionable.

### 2.  Public Policy

Controlling law provides Trial Courts with authority to refrain from enforcement of contacts that are in violation of public policy.  *State Farm Mut. Auto. Ins. Co. v. Hodgkiss-Warrick*, 413 S.W.3d 875, 879-80 (Ky. 2013) ("It is, of course, a well-settled principle of general contract law that courts are not to enforce contracts in contravention of public policy."); *see also City of Hazard Municipal Housing Commission v. Hinch*, 411 S.W.2d 686, 689 (Ky. 1967) ("A contract for exemption from liability for negligence is generally void and unenforceable if it is violative of the law or contrary to some rule of public policy.").  Public policy "is not simply something courts establish from general considerations of supposed public interest, but rather something that must be found clearly expressed in the applicable law."  *Kentucky Farm. Bureau Mut. Ins. Co. v. Thompson*, 1 S.W.2d 475, 476-77 (Ky. 1999).  For instance, in *Hodgkiss-Warrick*, our Supreme Court identified "a broad and seemingly broadening public policy against household or family exclusions from liability coverage. . . ."  413 S.W.3d

at 883. Yet, the Court enforced the contract at odds with this public policy, holding that such a "mandate must come from the General Assembly." *Id.* at 886.

In the appeal at hand, Owner contends that a unilateral attorneys' fees provision is against public policy unless it is interpreted as reciprocal. Owner fails to identify any expressed public policy to that effect. Unlike several other states, Kentucky has not promulgated legislation superseding a unilateral contractual fee provision. *See* Cal. Civ. Code § 1717; Wash. Rev. Code § 4.84.330; Fla. Stat. Ann. § 57.105(7). The only public policy germane to this issue that this Court can identify is KRS 411.195, which this Court briefly discussed above. Again, KRS 411.195 authorizes enforcement of attorneys' fees provisions in written instruments evidencing a debt or a lien. Thus, if anything, Kentucky's public policy appears to support one-way contractual provisions providing for attorneys' fees. Similarly, the Commonwealth has an important public policy of encouraging "contracts voluntarily made between competent persons[,]" which "are not to be set aside lightly . . . [as] the right of private contract is no small part of the liberty of the citizen[.]" *Zeitz v. Foley*, 264 S.W.2d 267, 268 (Ky. 1954).

The Trial Court's Opinion and Order cited an unpublished case from the United States Eastern District of Kentucky and held that a contractual, unilateral attorneys' fees provision that is voluntarily entered into between two competent persons cannot be set aside absent "a clear and certain statement of

-21-

strong public policy in controlling laws or judicial precedent." *Vasquez v. Paso Fino Horse Ass'n Inc.*, No. CV 5:18-366-DCR, 2019 WL 3842863, at \*3 (E.D. Ky. Aug. 14, 2019) (quoting *Hodgkiss-Warrick*, 413 S.W.3d at 880).  While not controlling, the District Court in *Vasquez* applied Kentucky authority, and Owner has failed to present a persuasive reason to deviate from the Trial Court's reliance thereon.  Moreover, considering that we are unconstrained by a specific public policy here, we find that the Trial Court ruled within the bounds of its discretion in enforcing the clearly-articulated Fee Provision.

Owner creatively posits that this Court should set its own public policy standards under the guise of this issue being one of first impression.  Yet, Owner mischaracterizes the issue as whether a unilateral fee provision is in contravention of public policy where the allegedly non-prevailing party, who did not bring forth suit, is awarded fees pursuant to said provision.  Owner's factual framing of the issue is debatable.  We agree with the Trial Court that Owner is not necessarily the prevailing party in this situation.  Owner may have procedurally prevailed in the fact that the jury found Builder breached the Contract, but Builder successfully defended against the majority of Owner's claimed damages.  As the Trial Court explained, Builder remained in the same position regarding payment under the Contract and did not suffer a net loss from the jury's determination of damages.  Indeed, the jury awarded Owner damages in the amount of the garage

door, which Builder "was not allowed to deliver to [Owner] under the terms of the contract . . . [because Owner] would not let [Builder] on his property after growing frustrated . . . ." *Id.* Significantly, Builder was already in receipt of the fair market value of the garage door, and it suffered no damages based on the amount that the jury awarded Owner.

Importantly, besides the costs of the overhead doors, the jury did not award Owner any other damages for Builder's alleged contractual breach of contract. Therefore, the jury rejected Owner's other claims of damages concerning the workmanlike condition of the barn. As a result, Builder may be classified as the prevailing party considering that its counsel successfully defended against Owner's claims, resulting in a verdict imposing a zero-net loss upon Builder despite its facing compensatory damages, punitive damages, and attorneys' fees and costs. Even so, we must underscore that Owner's argument is without merit as public policy is not contingent on a prevailing party-type analysis. *Superior Steel*, 540 S.W.3d at 787 (reversing the Trial Court's award of attorneys' fees where the contractual provision required the awarded party to be the prevailing party). And we do not find it relevant that some jurors found the breach, and a different grouping of jurors awarded damages. Civil verdicts are not required to be unanimous, or even identical on each count. The lack of uniformity of jurors on

different verdicts, or on liability as opposed to damages, does not prove that a compromise verdict was reached, as was suggested at oral argument.

The identity of the party prevailing is inapposite to the issue here. While Owner may be technically correct that, as he stated at oral argument, there is no precedent stating that a prevailing party must pay a non-prevailing party attorneys' fees, this case involves a contractual fee provision that is decidedly not dependent upon which party prevails – or even that litigation occur at all. It merely requires the employment of an attorney, an action that both parties eventually took.

In addition, we reject the notion that unilateral attorneys' fees provisions are *per se* against public policy. Our Commonwealth has "long respected freedom of contract and allowed parties to allocate among themselves the foreseeable risks." *Superior Steel*, 540 S.W.3d at 786 (holding "pay-if-paid" terms in a construction contract do not violate Kentucky's public policy); *see also Zeitz*, 264 S.W.2d at 268 (deducing that contracts should not "be set aside lightly" because the "right of private contract is no small part of the liberty of the citizen"). Thus, "[w]hile there are valid policy reasons for disfavoring [unfair] provisions, any prohibition against this type of contract clause should come from the legislature rather than from this Court." *Superior Steel*, 540 S.W.3d at 786. Here, the parties agreed by contract that Owner would bear the burden of paying

Builder's attorneys' fees should it be required to employ an attorney to enforce its rights under the contract. Builder abided by the Contract in retaining trial counsel, and the Trial Court's enforcement of the Fee Provision was therefore not in contravention of public policy.

### 3. Unconscionability

While Owner seeks avoidance of the Fee Provision by asserting it is procedurally and substantively unconscionable, this Court has been unable to locate Owner's argument to the Trial Court pertaining to unconscionability. Nonetheless, we will assume that unconscionability is a subset of Owner's public policy argument.

"The doctrine [of unconscionability] is used by the courts to police the excesses of certain parties who abuse their right to contract freely. It is directed against one-sided, oppressive and unfairly surprising contracts, and not against the consequences *per se* of uneven bargaining power or even a simple old-fashioned bad bargain." *Schnuerle v. Insight Communications, Co.*, 376 S.W.3d 561, 575 (Ky. 2011). Procedural unconscionability concerns the development of the parties' agreement and the form of said agreement. *Id.* at 576-77; *Energy Home, Div. of Southern Energy Homes, Inc. v. Peay*, 406 S.W.3d 828, 836 (Ky. 2013) (providing examples of procedural unconscionability as "the use of fine or inconspicuous print and convoluted or unclear language that may conceal or obscure a contractual

term"). To evaluate procedural unconscionability, a Court must evaluate "the bargaining power of the parties, the conspicuousness and comprehensibility of the contract language, the oppressiveness of the terms, and the presence or absence of a meaningful choice." *Schnuerle*, 376 S.W.3d at 576.

Substantive unconscionability encompasses "contractual terms that are unreasonably or grossly favorable to one side and to which the disfavored party does not assent." 406 S.W.3d at 835 (citing *Schnuerle*, 376 S.W.3d at 577). Necessary to analyze a party's claim of substantive unconscionability, a Trial Court must consider "'the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and similar public policy concerns.'" *Schnuerle*, 376 S.W.3d at 577 (quoting *Jenkins v. First Am. Cash Advance of Ga., L.L.C.*, 400 F.3d 868, 876 (11th Cir. 2005)). Regardless of its classification, unconscionability is a narrow exception to our well-established rule favoring contract enforceability. *Schnuerle*, 376 S.W.3d at 575.

We cannot find a reasonable basis to set aside the Contract based upon alleged substantive or procedural unconscionability. The Fee Provision was not discreetly placed in a manner to trick Owner into agreement. The Fee Provision was provided in the same format as every other provision of the Contract. The Fee Provision is also set apart via a separately numbered provision. The pages

requiring a signature or initial appear to relate to the specifications of the barn construction. Regarding the language of the Fee Provision, the "terms are not confusing, [are] easily understandable by persons of ordinary experience and education, and further do not limit damages available or statutory remedies." *Green v. Frazier*, 655 S.W.3d 340, 347 (Ky. 2022). Even if Builder sought to "trick" Owner by hiding the Fee Provision or utilizing puzzling language, which we do not find, Owner himself conceded in his sworn testimony during his deposition that he not only refused an attorney's review of the Contract, but also completely failed to read the Contract before signing. TR, p. 158, 298. Our Supreme Court aptly explained that "[a] fundamental rule of contract law holds that, absent fraud in the inducement, a written agreement duly executed by the party to be held, who had an opportunity to read it, will be enforced according to its terms." *Conseco Fin. Servicing Corp. v. Wilder*, 47 S.W.3d 335, 341 (Ky. App. 2001); *see also Schnuerle*, 376 S.W.3d at 575. Simply put, written contracts are generally enforceable against a party who had an opportunity to read them, and one waives that opportunity at his own peril. *Green*, 655 S.W.3d 346 (citing *Schnuerle*, 376 S.W.3d at 575).

In addition, we understand Owner's self-perception as being unfamiliar with the barn-building process. That fact alone neither proves unconscionability nor excuses Owner from the responsibility of seeking

-27-

professional review of the Contract or of even reading the Contract for himself. Moreover, the Fee Provision at issue does not demonstrate terms that "no man in his senses, not under delusion, would make, on the one hand, and which no fair and honest man would accept, on the other." *Conseco*, 47 S.W.3d at 342. Fee-shifting provisions, similar to arbitration provisions, are customary in the construction business and are commercially reasonable. *See Energy Homes*, 406 S.W.3d at 836. Here, Owner signed the Contract allocating the reasonable risk associated with the cost of hiring an attorney and provided consideration for the same. The Fee Provision was plainly a part of the bargained-for Contract, which Owner was free to reject. As Builder notes, it does not maintain a monopoly on pole barn construction. Owner remained at liberty to seek another builder to construct the barn under contractual terms that were more desirable to him. *See Prewitt v. Estate Bldg. & Loan Ass'n*, 156 S.W.2d 156, 173 (Ky. 1941). He chose not to do so. We will not award him a windfall for choices that in hindsight may have been unwise.

Regarding Owner's qualms with the Fee Provision's lack of reciprocity, we also reject the notion that unilateral terms demonstrate unconscionability. The Contract does not present a "take-it-or-leave-it" situation where Owner was forced to agree to the Fee Provision without input or choice.

This Court has expressly held that a contract drafted by one party without the other party's input is not proof of unconscionability. *Conseco*, 47 S.W.3d at 342 n.20. The Kentucky Supreme Court, in *Grimes v. GHSW Enterprises, L.L.C.*, 556 S.W.3d 576, 582-83 (Ky. 2018), rejected any requirement, albeit in the context of arbitration, that both parties must agree equally to submit to arbitration. The Court held "that as long as the requirement of consideration is met, no additional requirement of mutuality of obligation exists." *See Green*, 655 S.W.3d at 348 (citing *Grimes*, 556 S.W.3d at 582-83).

Similarly, here, Owner's citation to the doctrine of unconscionability to attempt to overcome a contractual, unilateral fee provision simply fails to pass muster under the precedential jurisprudence of this Commonwealth. The facts of the appeal *sub judice* do not present an oppressive or surprising contract to which Owner was unable to bargain. On the contrary, Owner candidly (and perhaps shamelessly) admitted that he did not even feel it necessary to take the given opportunity to read the Contract that he chose to sign and that he now wants to dispute.

Absent law to the contrary, the Fee Provision was not procedurally or substantively unconscionable. The Trial Court's enforcement of the Fee Provision did not constitute an abuse of discretion.

### 4. *Equity*

Owner's final argument rests in his assertion that, regardless of the Fee Provision, he is entitled to his reasonable attorneys' fees as a matter of equity. Owner posits that he commenced suit to recoup monies paid in conformity with the Contract, which Builder breached. As he was awarded money, he claims to be the prevailing party. Consequently, Owner argues that it would be unfair to require him to pay for his own attorneys' fees in prosecuting his purportedly successful breach-of-contract action against Builder. Owner's argument is based solely upon the case of *Batson v. Clark*, 980 S.W.2d 566 (Ky. 1998), which concerned wrongful eviction, with damages consisting of relocation expenses and attorneys' fees. *Id.* at 577. The *Batson* Court held that it would not disturb the Trial Court's decision to place the evicted parties "in the same position in which they would have been had they not been forced from the property." *Id.*

Obviously, *Batson* is distinguishable from the appeal before us, and its application falls well-short of supplying this Court with authority to overturn the Trial Court's denial of Owner's motion for entitlement to attorneys' fees as a matter of equity. There is no status quo to be preserved here. Rather, in the case *sub judice*, Owner knew, or reasonably should have known if he had read the Contract, that a suit pursuant to its terms would subject him to liability for Builder's attorneys' fees. And he is the one who started the litigation. As stated

-30-

above, Kentucky law does not require Courts to declare a unilateral contract provision as necessarily or automatically unfair. Moreover, as Builder noted at the oral argument, Owner was allegedly the first party to breach the contract by prohibiting installation, and thus under some circumstances in equity, he would not be entitled to demand reimbursement of attorneys' fees at all. Accordingly, and for all of these reasons, we find no error in the Trial Court's Opinion and Order denying Owner entitlement to attorneys' fees and costs.

## II. Builder's Cross-Appeal for Attorneys' Fees

Builder's cross-appeal contends that the Trial Court erred in awarding it a reduced attorneys' fee award. In support thereof, Builder directs this Court to its requested fee award in the amount of $61,588.75.

As detailed, the Trial Court found that Builder's requested reward was unreasonably excessive. The Trial Court utilized SCR 3.130(1.5) to evaluate the reasonableness of Builder's requested award and found Neal's Billing history report lacked critical details. Nonetheless, the Trial Court was able to compute a fee award, but it did not articulate its calculation other than substantiating the reasonableness of Builder's partial claim to fees in relation to the three-day trial. On cross-appeal, Builder seeks the difference of $31,657.50. Builder maintains that it is not obligated to provide additional details regarding its billing pursuant to the attorney-client privilege.

As stated, an award of attorneys' fees is "within the sound discretion of the trial court and [its] decision will not be disturbed on appeal absent an abuse of discretion." *Giacalone v. Giacalone*, 876 S.W.2d 616, 620 (Ky. App. 1994) (citing *Gentry v. Gentry*, 798 S.W.2d 928 (Ky. 1990)); *see also Wilhoit v. Wilhoit*, 521 S.W.2d 512 (Ky. 1975).

Builder's summary argument to this Court, without explanation, asserts that the Trial Court is required to presume that Neal's affidavit and accompanied Billing history report demonstrate that the fees sought were reasonable. Builder cites KRS 304.39-020(5)(a) for this proposition, a statute that presumes medical bills incurred for injuries sustained in an automobile accident are reasonable. Builder provides no expounding as to any reason that KRS 304.39-020(5)(a) would be analogous to the appeal before us.

Builder also suggests that Owner is not permitted to challenge the Trial Court's award of fees without first requesting an evidentiary hearing. We refrain from commenting on the correctness of this position because Builder provides no support for this argument. If Builder seeks to overcome the Trial Court's wide discretion on its award, we expect more than a singular citation to an unanalogous statute. Any other conclusion would be akin to offering Builder a blank check for fees incurred in defending the lawsuit. *Daly v. Power*, 33 S.W.2d 305, 307 (Ky. 1930) ("This, however, does not mean that the court may arbitrarily

-32-

disregard the evidence, refuse to be informed by it, and fix the fee at any sum it may choose without being responsible for an abuse of discretion."). That is not the law of this Commonwealth, and Builder does not provide reasoning or authority to the contrary.

Owner, on the other hand, argues that the Trial Court abused its discretion by failing to apply the factors established in *Axton v. Vance*, 269 S.W. 534 (Ky. 1925). In *Axton*, the Court delineated the following factors that a Trial Court should consider when determining the reasonableness of attorneys' fees: "(a) Amount and character of services rendered. (b) Labor, time, and trouble involved. (c) Nature and importance of the litigation or business in which the services were rendered. (d) Responsibility imposed. (e) The amount of money or the value of property affected by the controversy, or involved in the employment. (f) Skill and experience called for in the performance of the services. (g) The professional character and standing of the attorneys. (h) The results secured." *Id.* at 536-37. These factors represent the variables that a Trial Court considers in adjusting the "lodestar" figure as articulated and adopted in *Meyers v. Chapman Printing Co., Inc.*, 840 S.W.2d 814 (Ky. 1992).

*Meyers* arose from an attorneys' fee award under the Kentucky Civil Rights Act, wherein the Court was confronted with the issue regarding the reasonableness of the fees. Under Kentucky law, the "lodestar" method is the

starting point for calculating reasonable attorneys' fees absent a contractual or standard allocation. *See Meyers*, 840 S.W.2d at 826. Generally, a Trial Court determines the reasonableness of requested attorneys' fees by utilizing the lodestar amount—a calculation of the hours expended multiplied by the attorneys' hourly rates, and it then adjusts the amount to account for various special factors in the litigation. *Id.*

However, the appeal before us does not concern the reasonableness of an award of attorneys' fees statutorily authorized for the purposes of insuring individuals alleging civil rights violations have access to the judicial process. This appeal concerns the reasonableness of legal fees under a written Contract.

The Contract does not articulate or define what constitutes reasonable fees. Thus, this Court must interpret the contract *de novo*. *Inn-Group Management Servs., Inc. v. Greer*, 71 S.W.3d 125, 130 (Ky. App. 2002). "'Generally, . . . in construing contracts courts endeavor to give effect to the parties' intent as expressed by the ordinary meaning of the language they employed.'" *Mostert v. Mostert Grp., L.L.C.*, 606 S.W.3d 87, 91 (Ky. 2020) (quoting *North Fork Collieries, L.L.C. v. Hall*, 322 S.W.3d 98, 105 (Ky. 2010)).

The plain language of the Contract utilizes the term "reasonable attorneys' fees." Under Kentucky law, the "lodestar" method is the starting point for calculating reasonable attorneys' fees, including applicable adjustments

adopted in *Meyers* and its progeny. *See*, *e.g.*, *Mid South Capital Partners, LP v. Adkins*, 626 S.W.3d 688, 691 (Ky. App. 2020). As explained, the Trial Court neither determined a lodestar figure nor identified the reasonableness of the number of hours Neal spent in defense of the action or his hourly rate. However, this Court has not been directed to any authority mandating a particular formula for awarding fees based on a similar contractual provision. That matter is best left to the Trial Court's discretion, which, at minimum should consider the lodestar figure or the factors established in *Axton.*

Based on our review of the record on appeal and appellate briefs, we have no method of evaluating the lodestar figure or *Axton* factors. Neal requests legal services in the amount of $61,588.75. We do not know the hours this amount represents or the hourly fee Neal or his staff charged for such services. Likewise, we are unaware of the fee arrangement for which Builder contracted with Neal for such services. The single billing entries assigned to monetary totals fail to describe any details as to which tasks Neal or his staff performed. The elements sustaining the value an attorney claims as compensation for legal services rendered must be proven. The Trial Court's award is problematic because it lacked sufficient evidence on which to base a reasonable award. While the Trial Court commented on Neal's professional standing, reputation, and comparative ability to opposing counsel, the award – being that it was simply the request split in half – appears

-35-

arbitrary and randomly assigned. There is simply insufficient evidence to support the 50% figure of Builder's award for attorneys' fees. The implication that opposing counsel's claim for less than half of the amount of Builder's fees is the proper amount lacks any evidentiary foundation. Neal's Billing history report merely lists indistinguishable totals with no specificity other than the date of billing. The Trial Court certainly enjoys wide discretion in awarding attorneys' fees; yet such an award must be based in law. *See A & A Mech., Inc. v. Thermal Equip. Sales, Inc.*, 998 S.W.2d 505, 514 (Ky. App. 1999). And while neither party requested a hearing on the issue – and both should have – the Trial Court itself is likewise responsible for appreciating the need for a hearing and evidence before making a determination as to the fee to award here.

Other than splitting the requested fee in half, this Court is unable to identify the methodology that the Trial Court utilized in decreasing Builder's fee request. We, therefore, cannot properly evaluate whether the Trial Court acted within the bounds of its discretion. We note *Capitol Cadillac Olds, Inc. v. Roberts*, 813 S.W.2d 287, 293 (Ky. 1991), wherein the Court was faced with a contractual attorneys' fees provision allocating fees in the amount of 15% of the amount due under the contract. In rejecting the liquidated amount of attorneys' fees, the Court explained that the basic requirement is for the party requesting fees to provide

proof of reasonableness, and that the fee "accurately reflects the reasonable value of bona fide legal expenses incurred." *Id.*

Builder, once challenged as to the reasonableness of the requested fees, is required to prove his entitlement to the claimed amount of fees sought. *See Fidelity & Cas. Co. of New York v. Mauney*, 116 S.W.2d 960, 962 (1938). Here, Owner contested the amount that Builder requested in attorneys' fees, and we lack sufficient information to provide the Trial Court latitude in its award, the reasoning for which was undeveloped. *See Baker v. Motorists Ins. Cos.*, 695 S.W.2d 415, 417 (Ky. 1985) (holding, in the context of statutorily required attorneys' fees, that a Trial Court must nonetheless conduct an analysis considering the reasonableness of attorneys' fees). Therefore, in the absence of evidentiary support, we must find an abuse of discretion below that compels us to reverse the Trial Court's award of attorneys' fees to Builder and remand for reconsideration. Upon remand, we leave the amount of attorneys' fees to the discretion of the Trial Court after reaching an articulable calculation that considers the reasonableness of Neal's requested fees.

## III. Owner's Challenge to Non-Wage Garnishment Affidavit

Lastly, we review Owner's challenge to Builder's affidavit seeking non-wage garnishment of Owner's joint bank account, which he shares with his spouse, and which includes deposits of her monthly benefit payments from TRS. Owner argues that his spouse's TRS benefits are exempt from garnishment

pursuant to KRS 161.700 and 427.150 and retain their exempt status after their deposit to the joint account. Builder contends that funds paid from a defined benefit plan such as TRS do not retain their character as exempt payments once paid into an account owned wholly or jointly by another person. The Trial Court agreed and denied Owner's challenge.

Again, we review *de novo* the Trial Court's interpretation of the garnishment exemption statutes. We recognize that, upon remand and reconsideration of Builder's reasonable attorneys' fees, the Trial Court may alter the sum that Builder is permitted to recoup, necessitating a new affidavit for garnishment. However, because Owner may still be subject to garnishment of his joint account, while not necessarily for the original sum, the issue of the exemption of funds held in the joint account is still pertinent to this case and controversy.

KRS 161.700(1) provides in pertinent part:

> [T]he right of a member to a retirement allowance and to the return of contributions, any benefit or right accrued or accruing to any person under KRS 161.220 to 161.716, and the money in the various funds established pursuant to KRS 161.220 to 161.716 are hereby exempt from any state or municipal tax, and shall not be subject to execution, garnishment, attachment, or other process, and shall not be assigned.

KRS 427.150, relating to the enforcement of judgments, confirms this garnishment exemption for "[a]ssets held, payments made and amounts payable under pensions

exempt pursuant to KRS 61.690, 161.700, and 427.125[.]" For purposes of KRS

Chapter 427, garnishment is defined as "any legal or equitable procedure through

which the earnings of any individual are required to be withheld for payment of

any debt." KRS 427.005. The term "earnings" includes "periodic payments

pursuant to a pension or retirement program." *Id.* As stated in *Brown*, we are

mindful of the following rules of statutory interpretation:

> When interpreting a statute, we look to the statute's
> express language and overall purpose. The task begins
> with the language of the statute itself. When a statute's
> language is plain, "the sole function of the courts is to
> enforce it according to its terms." *Caminetti v. United
> States*, 242 U.S. 470, 485, 37 S. Ct. 192, 194, 61 L. Ed.
> 442 (1917); *Bailey v. Reeves*, Ky., 662 S.W.2d 832
> (1984).

40 S.W.3d at 875-76 (citation omitted).

In support of his challenge to the garnishment and favored

interpretation of the relevant statutes, Owner cites *Matthews v. Lewis*, in which the

Kentucky Supreme Court ruled that workers' compensation benefits deposited to a

debtor's checking account were precluded from garnishment under KRS 342.180.

The Court observed that, "unless they provide clearly to the contrary, Kentucky's

exemption statutes, including but not limited to KRS 342.180, extend protection to

deposits in bank checking accounts *so long as those deposits can be identified as

or traced to payments of exempt funds*." 617 S.W.2d 43, 46 (Ky. 1981) (emphasis

added). We have declined to extend *Matthews* in cases that were distinguishable

-39-

based on their facts and the language of the applicable exemption statute. For

example, in *Brown* we held that percentage restrictions on wage garnishment did

not create a "true exemption" from garnishment of the debtor's wages when those

wages were deposited to a joint bank account. 40 S.W.3d 877-80. Unlike the

wage restrictions, we observed in *dicta* that the workers' compensation exemption

of KRS 342.180 analyzed in *Matthews*, as well as retirement exemption statutes

such as KRS 61.690, did create "a true exemption." *Id.* at 878. As to the debtor's

spouse's wages, which were also deposited to the joint account, we held that the

Trial Court was obliged to consider the spouse's "countervailing interest or the rule

that [a] judgment creditor acquires an interest in the garnished property no greater

than the debtor's." *Id.* at 880. However, and importantly, the debtor was the one

with the exemption in *Matthews* – not the spouse. And we did not hold that one

who willingly deposits otherwise-exempt funds into a joint account with clearly

non-exempt funds of a debtor spouse is entitled to protection.

In *Nunn v. Ross*, an unpublished opinion relied upon by the Trial

Court, we held that while a convicted legislator's retirement allowance was not

subject to garnishment when under the control of the Judicial Form Retirement

System, the benefit funds lost their exempt status upon payment to the prisoner's

inmate account. No. 2014-CA-000452-MR, 2015 WL 4880305, at *1 (Ky. App.

Aug. 14, 2015).[3] Conversely, Owner cites a case that is similarly non-binding on this Court, in which a Kentucky Bankruptcy Court, interpreting KRS 161.700 and 427.150, held that benefit distributions from a TRS account to a debtor did not lose their exempt status upon deposit to the debtor's checking account. *In re Dennis R. Cornett*, 332 B.R. 289, 2005 WL 2457206 (E.D. Ky. Oct. 3, 2005). However, that case involved an otherwise exempt debt, not a spouse's otherwise exempt debt in a joint checking account.

None of these cases are directly on point, and there is no case law, binding or not, to turn to for guidance. However, we do have the precise language of the exempting statute, and its silence on the issue before us is compelling. Nowhere does it state that otherwise exempt funds retain exemption when willingly blended with non-exempt funds of another. Indeed, we could find no case law supporting such an argument either. Stated differently, there is no legal authority for the proposition that a spouse can commingle her exempt funds with her debtor husband by intentionally depositing them in a joint, merged account with him and yet later be permitted to attempt to separate them somehow from collection efforts against her husband's non-exempt, mixed funds. As a matter of principle, if one desires to keep funds separated, she has the minimal burden of

---

[3] We cite this case only because it was cited by the Trial Court as persuasive, non-binding authority. RAP 41(A).

segregating them – even from her own, non-exempt funds. Otherwise, and once commingled, she runs the clear and readily-foreseeable risk of attachment. By its very nature, a joint account is totally accessible to both holders, for deposits, withdrawals, and management. It is shared, or married, for better or worse.

Further, it is not clear that Owner has standing to raise this issue on behalf of his wife, who is not a party to this action. Accordingly, we affirm the Trial Court's holding on this issue.

## CONCLUSION

This Court hereby affirms the Shelby Circuit Court's Order as to its ruling that Owner is not entitled to recover his attorneys' fees. This Court further affirms the Shelby Circuit Court's Order that Builder is entitled to recover its reasonable attorneys' fees pursuant to the Contract. Regarding Builder's cross-appeal, this Court reverses the Shelby Circuit Court's Order as to the amount awarded to Builder. Regarding Owner's separate appeal of the garnishment of his joint account, this Court affirms the Shelby Circuit Court's Order upholding the garnishment and denying the application of an exemption regarding commingled funds held in a joint bank account. Accordingly, this matter is hereby remanded to the Shelby Circuit Court with instructions that it take reasonable evidence – either by hearing or written affidavit – and award Builder its reasonable attorneys' fees

pursuant to a reviewable analysis and calculation falling within the bounds of the law.

ALL CONCUR.

BRIEFS FOR APPELLANT/CROSS-APPELLEE:

C. Gilmore Dutton, III
Shelbyville, Kentucky

ORAL ARGUMENT FOR APPELLANT/CROSS-APPELLEE:

C. Gilmore Dutton, III
Samuel B. Hoffman
Shelbyville, Kentucky

BRIEF FOR APPELLEE/CROSS-APPELLANT:

Chad R. Wadlington
Shelbyville, Kentucky

ORAL ARGUMENT FOR APPELLEE/CROSS-APPELLANT:

Andre F. Regard
Lexington, Kentucky